**SO ORDERED**

**SIGNED this 9 day of September, 2026.**

**Pamela W. McAfee**
**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**FAYETTEVILLE DIVISION**

**IN RE:**

**RICKY CRAIG SIMPSON**
**ANGELIKA MOSS SIMPSON,**

**DEBTORS.**

**CASE NO.**
**25-01840-5-PWM**
**CHAPTER 13**

## ORDER DETERMINING MORTGAGE FEES AND EXPENSES

The matter before the court is the motion to determine mortgage fees and expenses of MidFirst Bank (MidFirst)[1] and for sanctions against MidFirst filed by the debtors, Ricky Craig Simpson and Angelika Moss Simpson, D.E. 37. At issue is the intersection of mortgage fee noticing requirements under the Bankruptcy Code and North Carolina law. A hearing was conducted on July 23, 2026 in Fayetteville, North Carolina, at which counsel for the Simpsons and MidFirst appeared. At the conclusion of the hearing, the court took the matter under advisement. For the reasons that follow, the motion is allowed in part and denied in part.

[1] The mortgage is serviced by Midland Mortgage, a division of MidFirst Bank. Accordingly, although the proof of claim and related notices are filed on behalf of MidFirst Bank, the statements sent to the Simpsons are from Midland Mortgage. The court uses MidFirst to reference both the mortgage holder and the servicer.

**BACKGROUND**

Ricky Craig Simpson and Angelika Moss Simpson filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on May 15, 2025. They filed their plan on the same day, D.E. 2. The plan was confirmed on October 27, 2025, D.E. 33. The confirmed plan provides for payments on MidFirst's secured claim to be disbursed by the chapter 13 trustee at $764.64 per month, with arrears in the amount of $22,213.64 to be cured through the plan. D.E. 2 at 2. The claim is secured by real property located at 556 Fairview Drive, Fayetteville, North Carolina 28311 (the Residence), which is the primary residence of the Simpsons and is jointly owned by them as tenants by the entirety. *Id.*

MidFirst's claim is based on Mr. Simpson's execution, on March 31, 2016, of a note in the principal amount of $110,322, with that note being secured by a deed of trust on the Residence executed by both Mr. and Mrs. Simpson. D.E. 42; Claim No. 2-1, Part 2 at 8. The deed of trust provides that MidFirst may charge the Simpsons fees "for services performed in connection with [the Simpsons'] default, for the purpose of protecting [MidFirst's] interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees." Claim No. 2-1, Part 2 at 14.

Mr. Simpson defaulted on the note by failing to make the payments due on September 1, 2023 and thereafter. D.E. 42 at 1. MidFirst notified Mr. Simpson that the note was in default on March 13, 2024, and foreclosure proceedings commenced on January 13, 2025 in the Superior Court of North Carolina in Cumberland County. *Id.* at 2. On April 14, 2025, the state court permitted the foreclosure sale to go forward, finding all the statutory requirements had been met. *Id.* In accordance with North Carolina General Statutes § 45-21.17, the Substitute Trustee incurred expenses for mailing notices to the parties in interest on April 16, 2025 in the amount of $1.89,

and for publishing the notice of the sale on April 21 in the amount of $990. *Id.* The foreclosure sale took place on May 14, 2025, with National Asset Acquisition 2, LLC as the highest bidder. *Id.* Pursuant to North Carolina General Statutes § 45-21.15, the Substitute Trustee earned fees of $217.50 for conducting the sale. *Id.* at 3.

The Simpsons filed their bankruptcy petition on May 15, 2025 to prevent the foreclosure sale from becoming final. On May 16, 2025, the Substitute Trustee invoiced MidFirst for its fees related to the sale. *Id.* On May 30, 2025, MidFirst filed its proof of claim in the secured amount of $108,936.64, listing prepetition arrears in the amount of $21,596.41 and a contractual interest rate of 3.5%. Claim No. 2-1 at 2. The documentation attached to the proof of claim reflects the following fees: mailing notices to the parties ($1.89; dated April 16, 2025), publishing notice ($990; dated April 21, 2025), property inspection ($25; dated May 10, 2025), and Substitute Trustee ($217.50; dated May 14, 2025) for a total of $1,234.39 (the mailing, publishing, and Substitute Trustee Fees, collectively, the Foreclosure Fees). Claim No. 2-1, Part 2 at 3. The $25 property inspection fee was waived postpetition. *Id.*

On or around June 16, 2025, the Simpsons received a periodic mortgage statement from MidFirst, mailed to their address at the Residence, D.E. 37-1, Ex. A. The statement covers transaction activity from May 17 to June 16, 2025 (all postpetition), and lists five entries of "fees billed." *Id.* Four of these entries correspond to the Foreclosure Fees that were invoiced by the Substitute Trustee to MidFirst and have transaction dates of May 21 and May 22, 2025. *Id*. at 1. The fifth "fees billed" entry is in the amount of $1,225 and lists a transaction date of June 4, 2025. *Id.* at 3.

On October 30, 2025, pursuant to Rule 3002.1 of the Federal Rules of Bankruptcy Procedure, MidFirst filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges in the

amount of $450 for "Attorney Plan Review and Proof of Claim" (the Bankruptcy Fees). *See* Rule 3002.1 Notice, available on the CM/ECF Claims Register at Claim No. 2-1. A document attached to the Rule 3002.1 Notice lists a fee in the amount of $1,225 as incurred on May 30 and billed on June 4, 2025. *See id.* at 4. The fee amount of $1,225 on the attachment to the Rule 3002.1 Notice corresponds to the fifth "fees billed" entry dated June 4, 2025 appearing on the June 16 periodic mortgage statement mailed to the Simpsons, D.E. 37-1, Ex. A at 3. In response to the motion and at the hearing, counsel for MidFirst explained that the fee charged *to MidFirst* in the amount of $1,225 is the amount approved by FannieMae for bankruptcy-related fees, but the amount actually charged by MidFirst *to the Simpsons* as reflected in the Rule 3002.1 Notice was reduced to $450 in accordance with the local practice of this district. *See* D.E. 42 at 4; *see also* D.E. 42-1, Affidavit of MidFirst at 2, ¶ 9.

On November 4, 2025, a paralegal with the law firm representing the Simpsons emailed Justin Torres, the attorney who prepared and filed MidFirst's proof of claim, as follows:

> Pursuant to NCGS § 45-91, please provide a copy of the notice sent to the Debtors within 30 days after the assessment of each and every such post-petition fee, expense or charge listed on this form. See in re Saeed, No. 10-10303, Bankr. LEXIS 3267 (U.S. Bankr. M.D.N.C. Sept. 17, 2010).
>
> . . . [F]ailure to provide these notices by **December 9, 2025,** (which is beyond the thirty (30) days provided by law), will result in an Objection to Claim, seeking disallowance of these fees, expenses and charges, and compensation for our attorney's fees and expenses, to be paid by MidFirst Bank by further reduction of its claim.
>
> **ALTERNATIVELY**, if MidFirst Bank is willing to participate in good faith in the Loan Modification Management program, we will hold off the document request and any Objection while that process is pending. Please let us know and we will file a Motion for Loan Modification Management with the bankruptcy court noting your client's consent to participation.

*See* D.E. 42-3 at 3-4, Affidavit of Justin Torres, Ex. A. On November 7, 2025, Mr. Torres responded and transmitted a copy of the June 16 mortgage statement. *Id.* at 1, 5-6, Affidavit of Justin Torres, Ex. B.

**ISSUES BEFORE THE COURT**

The Simpsons filed the instant motion to determine mortgage fees and expenses of MidFirst and for sanctions against MidFirst on April 28, 2026, seeking disallowance of the $450 Bankruptcy Fee in the Rule 3002.1 Notice; a determination that no postpetition fees are recoverable against the Simpsons or the Residence because MidFirst did not comply with Rule 3002.1; damages, including an award of attorney's fees of at least $1,000; a determination that MidFirst failed to comply with state law and, as a result, that any additional fees are waived pursuant to North Carolina General Statutes § 45-91(3); an acknowledgment that the motion, as well as the correspondence made prior to this action, satisfies the 30-day notice requirement under North Carolina General Statutes § 45-94; a prohibition against MidFirst from assessing the challenged fees at a later date; and a determination that MidFirst violated the notice requirements of Rule 3002.1 of the Federal Rules of Bankruptcy Procedure. D.E. 37 at 5.

MidFirst contends, among other things, that the Foreclosure Fees are properly included in the proof of claim as incurred prepetition; that proper notice was given of its intent to recover the $450 Bankruptcy Fees; and that an award of attorney's fees is not appropriate in this matter due to its effort to fully disclose all fees; and that neither the motion nor the email to counsel constitute proper notice of an error or dispute required before seeking damages or attorney's fees under the North Carolina statute.

In short, the issues before the court are these: (1) whether the Foreclosure Fees were incurred prepetition and are properly the subject of the proof of claim, or were incurred postpetition

and should have been noticed pursuant to Rule 3002.1; (2) whether the Rule 3002.1 Notice disclosing the Bankruptcy Fees reflected impermissible "dual booking" of fees; (3) whether all of the fees were clearly and conspicuously disclosed to the Simpsons as required by North Carolina law; and (4) whether, based on the court's disposition of those issues, attorney's fees and sanctions against MidFirst should be awarded.

## DISCUSSION

### I. APPLICABLE STATUTES AND RULES

#### A. Federal Rule of Bankruptcy Procedure 3002.1

Rule 3002.1 of the Federal Rules of Bankruptcy Procedure sets forth noticing requirement for claimholders with claims secured by the debtor's principal residence. As applicable in this case, it provides:

> (c) Fees, Expenses, and Charges Incurred After the Case Was Filed; Notice by the Claim Holder. The claim holder must file a notice itemizing all fees, expenses, and charges incurred after the case was filed that the holder asserts are recoverable against the debtor or the debtor's principal residence. Within 180 days after the fees, expenses, or charges are incurred, the notice must be filed and served on the individuals listed in (b)(1) [the debtor, debtor's attorney, and trustee].
>
> (d) Filing Notice as a Supplement to a Proof of Claim. A notice under (b) or (c) must be filed as a supplement to a proof of claim using Form 410S-1 or 410S-2, respectively. The notice is not subject to Rule 3001(f).
>
> (e) Determining Fees, Expenses, or Charges. On a party in interest's motion, the court must, after notice and a hearing, determine whether paying any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law. The motion must be filed within one year after the notice under (c) was served, unless a party in interest requests and the court orders a shorter period.
>
> * * *
>
> (h) Claim Holder's Failure to Give Notice or Respond. If the claim holder fails to provide any information as required by this rule, the court may, after notice and a hearing, do one or more of the following:

> (1) preclude the holder from presenting the omitted information in any form as evidence in a contested matter or adversary proceeding in the case—unless the court determines that the failure was substantially justified or is harmless;
> (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure; and
> (3) take any other action authorized by this rule.

Fed. R. Bankr. P. 3002.1(c)-(e), (h). The Committee Notes accompanying Rule 3002.1 upon its adoption in 2011 provide that

> . . . Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if appropriate, and to adjust postpetition mortgage payments to cover any undisputed claimed adjustment. Compliance with the notice provision of the rule should also eliminate any concern on the part of the holder of the claim that informing a debtor of a change in postpetition payment obligations might violate the automatic stay.

Fed. R. Bankr. P. 3002.1 Committee Notes – 2011.

Upon receipt of the notice required by Rule 3002.1(c), the debtor may challenge the proposed fees by filing a motion, and "the court must, after notice and a hearing, determine whether paying any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law." Fed. R. Bankr. P. 3002.1(e). Failure to provide the required information subjects a creditor to disallowance of the claimed fees as well as sanctions in the form of an award of reasonable attorney's fees to the debtor. Fed. R. Bankr. P. 3002.1(h); *see also In re Rogers*, 677 B.R. 635, 640 (Bankr. M.D.N.C. 2025).

**B. North Carolina General Statutes §§ 45-91 through 45-94 and Cross-Referenced Material**

North Carolina General Statutes § 45-91 imposes certain requirements on servicers of home loans, regardless of whether the loan is in default or the borrower is in bankruptcy. That section provides, in relevant part:

> § 45-91. Assessment of fees; processing of payments; publication of statements.
>
> A servicer must comply as to every home loan, regardless of whether the loan is considered in default or the borrower is in bankruptcy or the borrower has been in bankruptcy, with the following requirements:
>
> (1) Any fee that is incurred by a servicer shall be both:
>
> a. Assessed within 45 days of the date on which the fee was incurred. Provided, however, that attorney or trustee fees and costs incurred as a result of a foreclosure action shall be assessed within 45 days of the date they are charged by either the attorney or trustee to the servicer.
>
> b. Explained clearly and conspicuously in a statement mailed to the borrower at the borrower's last known address within 30 days after assessing the fee, provided the servicer shall not be required to take any action in violation of the provisions of the federal bankruptcy code. The servicer shall not be required to send such a statement for a fee that either:
>
> 1. Is otherwise included in a periodic statement sent to the borrower that meets the requirements of paragraphs (b), (c), and (d) of 12 C.F.R. § 1026.41.
>
> 2. Results from a service that is affirmatively requested by the borrower, is paid for by the borrower at the time the service is provided, and is not charged to the borrower's loan account.
>
> * * *
>
> (3) Failure to charge the fee or provide the information within the allowable time and in the manner required under subdivision (1) of subsection (a) of this section constitutes a waiver of such fee.
>
> (4) All fees charged by a servicer must be otherwise permitted under applicable law and the contracts between the parties. Nothing herein is intended to permit the application of payments or method of charging interest which is less protective of the borrower than the contracts between the parties and other applicable law.

N.C. Gen. Stat. 45-91(1), (3)-(4).

The three referenced paragraphs of 12 C.F.R. § 1026.41 govern the timing, form, and content of periodic mortgage statements, respectively, and require servicers to "make the disclosures required by this section clearly and conspicuously." 12 C.F.R. § 1026.41(c). The

Consumer Financial Protection Bureau's official interpretation of the "clear and conspicuous" standard "generally requires that disclosures be in a reasonably understandable form." Official Interpretation of 41(c) Form of the Periodic Statement, 12 C.F.R. § 1026.41(c). Subsection (d)(4) requires a periodic mortgage statement to contain

> a list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), transaction activity means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, *a brief description of the transaction*, and the amount of the transaction for each activity on the list.

12 C.F.R. § 1026.41(d)(4) (emphasis added).

Additionally, subsection (c) provides that "[s]ample forms for periodic statements are provided in appendix H-30," and "[p]roper use of these forms complies with the requirements of this paragraph (c) and the layout requirements in paragraph (d) of this section." 12 C.F.R. § 1026.41(c). The sample form for consumers in chapter 13 bankruptcy sets forth a practical example of compliance with subsection (d)(4). *See* 12 C.F.R. § 1026, app. H-30(F) (2026). In this example form, a $190 fee is listed in the transaction activity box and beside the fee is a clear, conspicuous, and brief description of what gave rise to the charge: "Late Fee (charged because full payment not received by 8/15/15)." *Id.*

North Carolina General Statutes § 45-94 provides the remedies available to borrowers for a servicer's failure to comply with the noticing requirements, as well as the conditions precedent to bringing a civil action under the statute:

> In addition to any equitable remedies and any other remedies at law, any borrower injured by any violation of this Article may bring an action for recovery of actual damages, including reasonable attorneys' fees. . . . [A]ny party to a home loan may enforce the provisions of this section. . . . [A]t least 30 days before a borrower or a borrower's representative institutes a civil action for damages against a servicer for a violation of this Article, the borrower or a borrower's representative shall notify the servicer in writing of any claimed errors or disputes regarding the borrower's

> home loan that forms the basis of the civil action. The notice must be sent to the address as designated on any of the servicer's bills, statements, invoices, or other written communication, and must enable the servicer to identify the name and loan account of the borrower. For purposes of this section, notice shall not include a complaint or summons. Nothing in this section shall limit the rights of a borrower to enjoin a civil action, or make a counterclaim, cross-claim, or plead a defense in a civil action. A servicer will not be in violation of this Article if the servicer shows by a preponderance of evidence that:
>
> > (1) The violation was not intentional or the result of bad faith; and
> >
> > (2) Within 30 days after discovering or being notified of an error, and prior to the institution of any legal action by the borrower against the servicer under this section, the servicer corrected the error and compensated the borrower for any fees or charges incurred by the borrower as a result of the violation.

N.C. Gen. Stat. § 45-94.

## II. ANALYSIS

### A. Whether Foreclosure Fees are Properly Included on the Proof of Claim or Must be Noticed Pursuant to Rule 3002.1

#### Contentions of the Parties

The Simpsons contend that the mortgage statement dated June 16, 2025, D.E. 37-1, Ex. A, shows postpetition transaction dates for the Foreclosure Fees, and that postpetition fees must be noticed in accordance with Rule 3002.1. D.E. 37 at 3. Because MidFirst "circumvented" the requirements of Rule 3002.1, they contend, the presumptive validity of the Foreclosure Fee contained in MidFirst's proof of claim has been waived[2] and, consequently, the Simpsons are entitled to an award of attorney's fees. *Id.* at 5.

---

[2] The Simpsons maintain that the difference in whether the fees were properly included on the proof of claim or should have been the subject of a Rule 3002.1 notice matters because of the shifting burden of proof. Specifically, Rule 3001(f) provides that a proof of claim is prima facie valid, but Rule 3002.1(d) provides that a postpetition fee notice is not subject to Rule 3001(f), meaning "the prima facie evidentiary benefits of filing a proof of claim . . . do not apply to a creditor's notice of post-petition fees." *In re Snow*, 603 B.R. 114, 121 (Bankr. W.D. Okla. 2019) (citing *In re Susanek*, 2014 WL 4960885, at * 2 (Bankr. W.D. Pa. 2014)). This "suggests that the drafters did not intend to afford creditors any special advantage with

MidFirst, on the other hand, maintains that the Foreclosure Fees were incurred in connection with the prepetition foreclosure sale, and the fact the prepetition expenses are shown on a postpetition monthly statement "does not transform the nature of the expenses into postpetition expenses." D.E. 42 at 6-7. The dates on which the fees were incurred is supported by the Affidavit of Grady Ingle, the Substitute Trustee, outlining the foreclosure process and identifying the dates on which the costs he billed to MidFirst were actually incurred. D.E. 42-2. MidFirst contends that no violation of Rule 3002.1 occurred because the Foreclosure Fees were incurred prepetition and associated with events that occurred prior to the commencement of the case, and, consequently, are properly included in the proof of claim and are not subject to the notice requirements of Rule 3002.1. *Id.* MidFirst also contends that an award of attorney's fees is "not appropriate in this matter either for the prepetition foreclosure expenses or the postpetition fees related to the proof of claim" because all the postpetition fees were properly disclosed. *Id.* at 12.

**Discussion**

Whether fees, expenses, and charges require a notice pursuant to Rule 3002.1(c) depends on when the fees, expenses, and charges were "incurred." Fed. R. Bankr. P. 3002.1(c). Only those "incurred *after* the case was filed" require a notice. *Id.* (emphasis added). The Bankruptcy Code does not define "incur." However, the United States Bankruptcy Court for the Southern District of Texas has held, in the context of Rule 3002.1(c), that "incur" is appropriately defined by its

respect to supplemental fees and charges." *In re Brumley,* 570 B.R. 287, 289 (Bankr. W.D. Mich. 2017). "Simply stated, it is the claim holder that bears the burden under Rule 3002.1(e)." *In re Green*, 25-03188-EG, at 5 (Bankr. D.S.C. Apr. 6, 2026). The claim holder can fail to shoulder this burden by a "failure to respond or provide further information" regarding the postpetition fees it seeks to collect. *Id.* at 5, 8. Practically speaking, however, the debtor is required to challenge the fees, whether asserted through a proof of claim or a Rule 3002.1 notice, before those fees could be denied under either burden of proof; then, if the fees are not legally permissible or if the creditor fails to respond to an objection, the fees would be denied under either burden of proof.

dictionary definitions: "'to suffer or bring on oneself (a liability or expense)'" and "'to become liable or subject to.'" *See In re Raygoza*, 556 B.R. 813, 820 (Bankr. S.D. Tex. 2016) (quoting *In re Simbaki, Ltd*, No. 13-36878, 2015 WL 1593888, at *6 (Bankr. S.D. Tex. Apr. 3, 2015) (discussing the definitions of "incur" found in the 10th edition of *Black's Law Dictionary* and in *Webster's Ninth New Collegiate Dictionary,* respectively)). The *Raygoza* court considered whether attorney's fees for preparing and filing a secured creditor's proof of claim were "incurred" on the date the lawyer performed the services, or on the date the lawyer invoiced the secured creditor for the services. *Id.* at 816, 820. The court held that the legal services were "incurred" on the date they were rendered — which aligns with "[b]oth the dictionary definition and the statutory context" in that a fee, expense, or charge is incurred when a party takes on a legal obligation to pay, and such an obligation arises when the service is rendered, not when a service is first reflected on a billing statement. *Id*. at 821.

North Carolina General Statutes § 45-91 is consistent with this interpretation, as it provides that "attorney or trustee fees and costs incurred as a result of a foreclosure action shall be assessed within 45 days of the date they are charged by either the attorney or trustee to the servicer," as distinct from other fees that are required to be assessed within 45 days of the date on which the fee was "incurred," suggesting that a foreclosure fee is "incurred" before it is "charged" to the servicer. *See* N.C. Gen. Stat. § 45-91(1)(a).

This court agrees with the *Raygoza* analysis, and finds that the Foreclosure Fees were incurred prepetition. A contrary finding would result in foreclosure-related fees always being subject to Rule 3002.1, because the filing of a chapter 13 petition often is timed to prevent a foreclosure from becoming final – meaning, the fees could not yet be billed as of the petition date. The plain meaning and purpose of Rule 3002.1 is to ensure that a debtor understands and has

proper notice of fees charged to the mortgage after the filing of the petition that might otherwise be hidden, which is not the same risk for foreclosure fees that occur prepetition and are included on the proof of claim. Accordingly, the court concludes that the Foreclosure Fees were properly included on MidFirst's proof of claim as prepetition fees, and the motion to determine the fees are impermissible on this basis is denied.

**B. Whether the Assessed Bankruptcy Fees Comply with Rule 3002.1**

**Contentions of the Parties**

The Simpsons assert that MidFirst also violated Rule 3002.1 through "dual-booking" of the Bankruptcy Fees, a practice that has been condemned by the bankruptcy courts in the other districts of North Carolina. D.E. 37 at 3. Specifically, the Simpsons contend that disclosing a $1,225 legal fee on the June 16 mortgage statement and attaching a document reflecting this fee to the Rule 3002.1 Notice, while at the same time including a fee for the same services in the Rule 3002.1 Notice in the amount of only $450, "demonstrates an intent to preserve the ability to collect fees post-discharge without court scrutiny" and is contrary to the purpose of Rule 3002.1; this practice, they argue, is "the very hidden fee problem [the rule] was implemented to resolve." *Id.* MidFirst asserts that it has been fully transparent with the court, as its Rule 3002.1 Notice demonstrates that MidFirst actually incurred $1,225 in fees but seeks only to recover $450 of that amount as a postpetition fee in this bankruptcy case. *See* D.E. 42 at 7-8.

According to MidFirst, "$1,225 is the standard allowable bankruptcy fee for proof of claim preparation and plan review under guidelines established by Fannie Mae," but the fee to be recovered from the debtor was reduced to $450 to be "consistent with general practice in the Eastern District." *Id.* at 4, 7. MidFirst contends that the North Carolina statutes require disclosure of *all* fees incurred by the mortgage holder, whether or not those fees are to be assessed to the

borrower, and that by itemizing the two fees in its notice, it is in full compliance with both the North Carolina statutes and Rule 3002.1. *See id*. at 8.

**Discussion**

"Rule 3002.1 was promulgated in 2011 to resolve a growing problem in chapter 13 cases" in which chapter 13 debtors who had successfully completed their plans found themselves "facing foreclosure proceedings due to undisclosed and unpaid postpetition mortgage fees that accrued during bankruptcy." *Rogers*, 677 B.R. at 639 (citing *In re Gravel*, 6 F.4th 503, 514 (2d Cir. 2021)). The rule requires servicers to file a detailed notice of all postpetition fees, expenses, and charges that a creditor asserts are recoverable against the debtor's residence, promoting "transparency and clarity" and safeguarding the debtor's fresh start. *Id.* Under the rule, the debtor may file a motion challenging the proposed fees, after which "the court must determine whether the asserted fees are 'required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments under § 1322(b)(5).'" *Id.* at 639-40.

At the same time, North Carolina General Statutes § 45-91 "requires a servicer to timely assess and provide notice of any fee incurred in connection with the mortgage, or that fee is deemed waived." *Rogers*, 677 B.R. at 640 (citing N.C. Gen. Stat. §§ 45-91(1), (3)). MidFirst contends that the North Carolina statute requires it to provide notice of the amount of the fee it actually paid, here, $1,225, as well as the $450 it is allowed to and intends to charge to the Simpsons through their bankruptcy pursuant to local practice. This argument and the interplay between Rule 3002.1 and North Carolina General Statutes § 45-91 has been addressed by the bankruptcy courts in the other two districts in North Carolina in *In re Rogers*, from the Middle District, and in *In re Peach*, No. 21-30390, 2025 WL 930363 (Bankr. W.D.N.C. March 25, 2025), and *In re Owens*, No. 12-40716, 2014 WL 184781 (Bankr. W.D.N.C. Jan. 15, 2014), both from the Western District.

The earliest case, *Owens,* reviewed the interplay between the statutes and rule as a matter of first impression. In that case, the mortgage servicer mailed a notice of postpetition fees to the debtors pursuant to the North Carolina statutes, but did not file a Rule 3002.1 notice. 2014 WL 184781 at *1. The servicer contended that it was not required to send the Rule 3002.1 notice because it did not intend to recover the fees from the debtor "at this present time," and that "creditors may track fees on a loan that they have no intention of collecting from the Debtor if a discharge is entered." *Id.* at *2. The servicer further contended that if the case was dismissed without a discharge, it would be entitled to collect those fees "as long as it complied with N.C. Gen. Stat. § 45-91." *Id.*

The *Owens* court disagreed with the servicer on all points. It first held that the servicer was required to comply with Rule 3002.1 because its mailing of the assessment notices was an assertion that the fees were recoverable, and its intent to waive the fee if a discharge was entered was irrelevant. *See id.* at *3. It then held that North Carolina General Statutes § 45-91 by its terms provides that a servicer is not required to take any action in violation of the Bankruptcy Code, and that

> [i]f [the servicer] was really concerned that it must comply with Section 45-91 even though it did not intend to collect the post-petition fees, then it could have either (A) stated in the assessment notice that the fees will not be required to cure default upon the completion of the confirmed plan and that the fees will be waived upon entry of discharge, or (B) complied with the form and manner of notice required by Rule 3002.1 and then allowed Debtors' counsel to seek disallowance of the fees unopposed.

*Id.* Finally, the court held that the purpose of Rule 3002.1 would be undercut if its requirements were waived merely because a creditor expresses an intent to collect the fee at a later date. *Id.* at *4. Because the issue came before the court as a matter of first impression, the *Owens* court declined to assess costs or fees under Rule 3002.1. *Id.*

Following *Owens*, the *Peach* court considered listings of fees due appearing on the debtor's online mortgage loan details and received in mortgage statements, none of which were the subject of a Rule 3002.1 notice. 2025 WL 930363, at *1. As noted further below, the *Peach* court determined that not only were the fees "confusing and anything but clear and conspicuous," but also that the failure to file a notice as required by Rule 3002.1 was an independent basis to disallow the fees. *Id.* at *4. Adopting the reasoning in *Owens*, the court concluded that the servicer "must file an FRBP 3002.1 notice with respect to post-petition fees during the pendency of the case regardless of whether it intends to collect the fees during the case or at some point in the future. A contrary holding would frustrate the purpose of the rule and be a tremendous disservice to debtors." *Id.* at *5. The court noted that the purpose of the rule is to permit the debtor to challenge the validity of charges, and

> [i]t would be much more difficult for a debtor to litigate these issues after her bankruptcy case, either in state court with a different attorney or by rehiring her bankruptcy attorney (or some other bankruptcy attorney) to reopen her case and litigate the issues in the bankruptcy case. . . . While a case is open and a debtor's plan is ongoing, the debtor can use bankruptcy tools to question the fees or modify her plan. This is exactly why the Advisory Committee added FRBP 3002.1 to the bankruptcy rules.

*Id.* (citations omitted).

In *Rogers*, the servicer sent conflicting notices of postpetition fees: a Rule 3002.1 notice in the amount of $400 was sent to the debtor, while a North Carolina General Statutes § 45-91 notice in the amount of $951.69 was sent to the debtor's non-filing spouse. 677 B.R. at 637-38. Although the latter notice included a statement that it "'is not a request for payment and is being provided . . . for informational purposes only,'" the servicer never definitively disclaimed "their ability to impose the fees at a later date." *Id.* at 644. Like MidFirst, the servicer contended that the North Carolina statute required notice of the full amount of the fee, regardless of whether it would be

charged to the debtor. *See id.* at 638-39. The *Rogers* court rejected this argument, holding that North Carolina General Statutes § 45-91 does not require servicers to assess – or notice – fees they do not intend to collect. *See id.* at 642-43.

> [Section 45-91] was intended to establish limits on the assessment of fees, not to necessitate assessing them to loans that otherwise would not be charged. Requiring disclosure and notice of fees that will not be assessed is not only contrary to the ordinary and plain meaning of 'assess,' but it is also directly contrary to the remedial, limiting, and protective purpose of the statute.

*Id.* This interpretation reduces the confusion a borrower may experience if she receives notice of a fee assessed to her account that the servicer does not intend to collect. *See id*.

*Rogers* also addresses the interplay between North Carolina General Statutes § 45-91 and Rule 3002.1, holding that noticing the assessment to the non-filing spouse ostensibly sought to preserve the creditor's right to charge the full fees against the debtor's principal residence in the future, without any opportunity for the bankruptcy court to determine whether the fee was lawful. *Id.* at 644. Because the servicer did not provide notice pursuant to Rule 3002.1(c) of the $551.69 in additional fees and never disclaimed its intent to collect the additional fees against the debtor's residence in the future, the court disallowed the full $951.69 amount from ever being collected. *See id.* at 645.

MidFirst contends that its notice complied with *Owens*, *Peach*, and *Rogers* because, unlike in those cases, the full amount of the fee was included in the Rule 3002.1 Notice. The problem, however, is that nowhere has MidFirst indicated that it is disclosing the charge only as a fee that *MidFirst* was charged but does not intend to collect, at any time, against the Simpsons or their residence. Instead, MidFirst appears to be reserving its right to collect the full $1,225 fee if the bankruptcy case is dismissed, but it did not contend that it disclosed the $1,225 fee in this manner to bring that fee before the court for adjudication as contemplated by *Peach* and *Rogers*; that is, to

allow this court to determine whether bankruptcy attorney fees in the amount of $1,225 could properly be charged against the Residence now or at a later date. Instead, MidFirst argued only that North Carolina law requires that all fees incurred by the servicer be timely noticed and that it was attempting to walk the line of complying with both the state statute and Rule 3002.1. *Rogers*, however, dispensed with the argument that state law requires disclosure of fees incurred by the creditor that it does not intend to charge to the debtor or the debtor's residence, leaving the court to surmise that the only reason for MidFirst to include notice of the fee charged to it as the servicer would be to preserve its right to charge that fee to the borrower in the future.

Without a clear articulation by MidFirst of the reason for the dual disclosure, the issue brought before this court by these parties was not whether either fee identified in the Rule 3002.1 Notice was permissible under the loan documents or applicable law, but rather the more limited question of whether disclosing two fees of differing amounts in this precise manner complied with Rule 3002.1 and the holdings in *Owens*, *Peach*, and *Rogers.* The court concludes that it does not. Absent some clear indication of what the servicer is attempting to achieve through this type of notice, the disclosure that MidFirst "actually incurred $1,225 in fees but only asserts that $450 is to be sought as a post-petition fee," D.E. 42 at 8, still appears to be a dual-tracking of fees designed to preserve MidFirst's ability to collect the full $1,225 at a later date without bringing the lawfulness of the fee before the court for adjudication.

MidFirst could have either confirmed or countered this assumption at any point within many pages of briefing or during the fulsome hearing on the topic, but it did not. Accordingly, without countering the Simpsons' objection with a basis upon which the court could determine that MidFirst would be entitled to charge the $1,225 against the Residence should the bankruptcy case be dismissed without completion of the plan, MidFirst is precluded from assessing and

charging the Foreclosure Fees both in the amount of $450 as the postpetition fee contained in its Rule 3002.1 Notice and in the amount of $1,225 disclosed in the attachment against the Simpsons or the Residence.

### C. Whether the Foreclosure Fees and Bankruptcy Fees Were Properly Noticed and Disclosed Under North Carolina Law

**Contentions of the Parties**

The Simpsons contend that MidFirst violated North Carolina General Statutes § 45-91(1)(b) by not "clearly and conspicuously" explaining the fees listed on the mortgage statement, because "fees billed" fails to "identify what actions, if any, the fees billed were incurred for." D.E. 37 at 4-5.

MidFirst contends that it complied with North Carolina General Statutes § 45-91(1)(b) by providing a periodic mortgage statement that conformed to the requirements of 12 C.F.R. §§ 1026.41(b)-(d), disclosing "both its foreclosure related expenses and its postpetition fees." *See* D.E. 42 at 9-10. MidFirst asserts that its periodic statement form is "substantially the same" as the example forms included in the appendices to the federal regulation. *See id.* at 10. By providing a periodic statement that it asserts was compliant with the relevant federal regulations, MidFirst contends that it supplied sufficient, statutorily compliant notice of all pre- and postpetition fees. *Id.*

**Discussion**

If a servicer fails to clearly and conspicuously disclose fees to be assessed to a borrower's primary residence, then those fees will be waived. N.C. Gen. Stat. § 45-91(3); *see also Peach*, 2025 WL 930363, at *4 (fees that are not explained in a clear and conspicuous manner will be deemed disallowed and waived under North Carolina General Statutes § 45-91(3)). Servicers will

be deemed to be in compliance with the "clear and conspicuous" standard if they meet the requirements of paragraphs (b), (c), and (d) of 12 C.F.R. § 1026.41.

The challenged entries on Mr. Simpson's mortgage statement are five items described as "fees billed." MidFirst contends that these descriptions are sufficient because they comply with the Federal Regulations. Paragraph (d) of 12 C.F.R. § 1026.41 requires a periodic mortgage statement to contain "a brief description" of any fees added to the account since the last statement, and, pursuant to the clear and conspicuous standard within paragraph (c), these brief descriptions must be in a reasonably understandable form. MidFirst contends that its statement is "substantially the same" as the example statement provided in the appendix to the federal regulation. D.E. 42 at 10. This is true; the two forms are substantially the same. However, using a form that is nearly identical to an example form is not the same as providing the detail required by the form. For instance, the example statement that MidFirst cites, Form H-30(F), describes a $190 fee as "Late Fee (charged because full payment not received by 8/15/15)." *See* 12 C.F.R. § 1026, app. H-30(F) (2026). This example describes why the fee was billed to the account in a clear and conspicuous manner, which is something that MidFirst failed to do on the June 16, 2025 periodic mortgage statement. Compliance with the example form would have reflected a corresponding explanation of what gave rise to each of the fees.[3] MidFirst provided no explanations, only "fees billed." Accordingly, the court finds that MidFirst's notice does not fall within the safe harbor of compliance with 12 C.F.R. § 1026.41, and it still must demonstrate that its notice clearly and conspicuously explains the fee under the North Carolina statute.

[3] For instance, a brief explanatory parenthetical that clearly and conspicuously described the $990 fee as "notice of foreclosure sale" would have satisfied the requirements paragraphs (b), (c), and (d) of 12 C.F.R. § 1026.41.

Other North Carolina bankruptcy courts have considered the clear and conspicuous issue in the context of fees similarly described. In *Peach*, discussed above, several fees listed on a debtor's mortgage statement were classified as past due and described as "'Legal Fees Due"' and "'Other Fees Due."' 2025 WL 930363, at *2. Although the bankruptcy court did not "set out a chronological listing of all of the fees and charges shown on those monthly statements," it concluded that the "the descriptions of the fees [the servicer] assessed on the monthly statements for the Debtor's mortgage account are confusing and anything but clear and conspicuous." *Id.* Because the descriptions were confusing, the court disallowed the fees and deemed them waived. *See id*. at *4.

Similarly, in *In re Saeed*, No. 10-10303, 2010 WL 3745641, at *2 (Bankr. M.D.N.C. Sept. 17, 2010), a servicer filed an amended proof of claim listing several fees that the court determined were not properly noticed under North Carolina General Statutes § 45-91(1). Those fees were largely associated with the prepetition foreclosure process, but the services giving rise to the fees were neither described nor dated. *See id.* at *1. The only explanatory notes offered were that the debtor's arrearage included "'reasonable pre-petition attorneys' fees to which [the servicer] is entitled"' and "'all [legal] work other than $118.00 related to [the] foreclosure process."' *Id.* The bankruptcy court concluded that "the explanatory notes contained in the proof of claim neither clearly nor conspicuously explain the fees assessed." *Id.* at *2.

As compared to the fee descriptions that other courts have found to be less than clear and conspicuous, this court finds that MidFirst's description of "fees billed" is even less clear than "Legal Fees Due," as in *Peach*, because, with respect to the latter fee description, the borrower, on some basic level, knows that the fees are associated with legal services. Additionally, "Legal Fees Due" and "Other Fees Due" indicate that the fees are due and owing as to the borrower. Here, the

fees in question are merely "billed," and there is no indication that the fees are due and owing. To add to the confusion, the "fees billed" entries are negative numbers rather than positive numbers, implying that these fees may be credits applied to Mr. Simpson's account; *i.e.*, amounts that he does not owe to MidFirst. Reading the mortgage statement in conjunction with the proof of claim and the Rule 3002.1 Notice, however, suggests that the "fees billed" entries were in fact charges to Mr. Simpson's account that he owes to MidFirst. Within the four corners of the June 16, 2025 periodic mortgage statement, there is no other information that would allow a reasonable borrower to understand what gave rise to the fees billed. One can only ascertain the basis for the five "fees billed" entries by cross-referencing the mortgage statement with MidFirst's proof of claim and its Rule 3002.1 Notice, documents that would not have existed outside of bankruptcy. This is patently unreasonable. A borrower cannot fairly be expected to synthesize multiple documents to determine what a fee may be for, or even whether the borrower owes it or should expect to see a credit in that amount. Accordingly, the court concludes that the mortgage statement does not comply with applicable state law since it does not clearly and conspicuously explain the fees with brief descriptions.

Because the mortgage statement fails to comply with the clear and conspicuous disclosure requirements of North Carolina General Statutes § 45-91(1)(b), the Foreclosure Fees[4] and Bankruptcy Fees listed on the June 16, 2025 periodic mortgage statement as "fees billed" are disallowed and deemed to be waived.

[4] According to the documentation attached to MidFirst's proof of claim, the $25 property inspection fee was waived postpetition on May 15, 2025. Claim No. 2-1, Part 2 at 3. However, given the overall confusing nature of the fees in this case, the court specifically finds the $25 property inspection fee is waived.

**D. Attorney Fees and Sanctions**

**Contentions of the Parties**

The Simpsons contend that the violations of Rule 3002.1 and the North Carolina statutes entitle them to an award of attorney's fees of "at least $1,000" and unspecified sanctions. D.E. 37 at 5. MidFirst contends that the Simpsons cannot recover damages for any violation both because the Simpsons, in mailing their motion to an address that was not listed on MidFirst's statement,[5] failed to comply with the notice requirements of North Carolina General Statutes § 45-94, D.E. 42 at 11, and also because the email sent to counsel does not identify any error or dispute, but instead requests information that was promptly provided.

**Discussion**

Rule 3002.1(h)(2) provides that if the claim holder fails to provide any information required by that rule, the court may, after notice and a hearing, award appropriate relief, including reasonable expenses and attorney's fees caused by the failure. Fed. R. Bank. P. 3002.1(h)(2). With respect to attorney's fees under Rule 3002.1 on this specific issue, the court is writing on somewhat of a blank slate. In *Owens*, the court declined to award attorney's fees because the issue was a matter of first impression. In *Rogers*, the debtor waived its request for attorney's fees.

In *Peach*, the court awarded attorney's fees in the amount of $8,592 and sanctions of $1,000, but the sanctions award was largely based on the violation of the North Carolina statutes and the amount of time the debtor spent trying to understand the various charges. The statutorily-required correspondence to creditor's counsel in *Peach* clearly indicated there was a dispute, and

[5] The Simpsons mailed their motion to MidFirst at 999 NW Grand Boulevard, #110, Oklahoma City, Oklahoma 73118, while the address listed on the billing statement for notices of error is PO Box 268959, Oklahoma City, Oklahoma 73126.

that letter went unanswered. 2025 WL 930363, at *2. In addition, the court was "shocked" to learn of the undisclosed dual tracking of the fees. *Id*. at *6. The court, however, described its award of sanctions as de minimus, and advised the servicer that if it was brought back before the court on "these or similar issues," it could expect the court to consider "far steeper monetary sanctions." *Id*. at *7.

The court agrees that the dual-tracking of fees is concerning, and although the court gives MidFirst the benefit of the doubt that it was attempting to comply with *Rogers*, the fact is that no one clearly articulated what MidFirst really intended by disclosing the full fee of $1,225 with its Rule 3002.1 Notice. MidFirst could easily have added an explanatory note to that page of the document that either said "MidFirst does not intend to assess this fee against the account or the property at any time," or "MidFirst intends to assess this fee against the property if the bankruptcy case is dismissed without completion."[6] In the first instance, nothing further would be needed. In the second, the Simpsons would have understood that that fee would be charged if their case is dismissed, unless they challenged the fee on the merits. Significantly, and as noted earlier, MidFirst could also have provided either of those explanations to the court, yet it did not. As a result, the court is left to believe that MidFirst is, in fact, dual booking the fee and intends to charge the fee if the bankruptcy is dismissed, yet failed to clearly convey that position. The fact that the Simpsons had to bring the matter before the court and there still is no affirmative statement from MidFirst as to what it actually intends provides sufficient grounds on which to award attorney fees to the Simpsons.

[6] If this is the explanation, then the fee is being "assessed" for purposes of Rule 3002.1 because MidFirst is contending that it is "recoverable." And in that instance, the court may determine the reasonableness of the fee.

On the other hand, although the Simpsons were successful in their challenges to all of the fees as not clearly and conspicuously described as required by North Carolina law, they may only recover damages under that statute if they meet a condition precedent; specifically, North Carolina General Statutes § 45-94 provides that

> . . . at least 30 days before a borrower or a borrower's representative institutes a civil action for damages against a servicer for a violation of this Article, the borrower or a borrower's representative shall notify the servicer in writing of any claimed errors or disputes regarding the borrower's home loan that forms the basis of the civil action. The notice must be sent to the address as designated on any of the servicer's bills, statements, invoices, or other written communication, and must enable the servicer to identify the name and loan account of the borrower.

Here, the Simpsons' counsel emailed counsel for MidFirst requesting evidence of compliance with § 45-94, but nowhere notified MidFirst that it disputed the charges. If the Simpsons' counsel had been as direct and transparent as is contemplated by the statute in sending that purported "notification," it is possible that MidFirst would have addressed and sought to resolve the issue, as is also contemplated by the statute. Instead, the Simpsons requested the court to deem their motion as the required 30-day notice. Based on this insufficiency, together with the court's conclusions as set forth above with respect to the dual-tracking practice, the court will award fees of $1,000 to counsel for the Simpsons but declines to award further sanctions.

## CONCLUSION

For the reasons set forth above, the court finds and concludes that the Foreclosure Fees were properly disclosed as prepetition fees and included on MidFirst's proof of claim; that the disclosure of two different Bankruptcy Fees in the Rule 3002.1 Notice without further explanation did not comply with *Rogers* and are on that basis disallowed; that the Foreclosure Fees and Bankruptcy Fees further were not clearly and conspicuously noticed as required by North Carolina

General Statutes § 45-91(1)(b) and are, therefore, disallowed and deemed to be waived; and the court awards attorney's fees to counsel for the Simpsons in the amount of $1,000.

**END OF DOCUMENT**